**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J, and REESE, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 20, 2017**

# In the Court of Appeals of Georgia

A17A0336. SDS REAL PROPERTY HOLDINGS, LTD et al. v.   DO-013
   THE CITY OF BROOKHAVEN et al.

DOYLE, Chief Judge.

This Court granted the application for discretionary review filed by SDS Real Property Holdings, LTD, and JLB Realty, LLC ("the Developers"), who now appeal from a superior court order affirming the decision of the City of Brookhaven Zoning Board of Appeals ("the ZBA"), which upheld the Planning Director's refusal to issue a land disturbance permit ("LDP") to the Developers. The Developers argue that the superior court erred by affirming the denial of the LDP because (1) underlying residential density requirements did not apply because they conflict with the overlay district regulations; (2) residential density requirements did not apply because no livable structure was planned for the underlying residentially zoned property; (3)

rezoning was unnecessary in order for issuance of an LDP, and therefore, denial of the LDP by the BZA resulted in exhaustion of administrative remedies; and (4) the court failed to apply the de novo standard of review. For the reasons below, we reverse.

> We review the construction of a zoning ordinance under a de novo standard. The scope of review of the superior court is limited to all errors of law and determination as to whether the judgment or ruling below was sustained by substantial evidence. . . . The construction of a zoning ordinance is a question of law for the courts. Zoning ordinances are to be strictly construed in favor of the property owner. [Because] statutes or ordinances which restrict an owner's right to freely use his property for any lawful purpose are in derogation of the common law, they must be strictly construed and never extended beyond their plain and explicit terms.[1]

Viewed in this light, the record shows that the Developers own property consisting of three parcels and approximately 4.6 acres of land within the municipal boundaries of the City of Brookhaven. Each parcel was originally zoned individually under the residential or commercial zoning ordinances. As to this underlying zoning, most of the property was zoned C-1, which allows only commercial and office uses

---

[1] (Citations and punctuation omitted.) *City of Dunwoody v. Discovery Practice Mgmt.*, 338 Ga. App. 135, 138-139 (2) (789 SE2d 386) (2016).

but no residential. The rear portion of the property was zoned R-100, which allows single-family detached dwellings only. In addition to the underlying zoning, all three lots were included in the Brookhaven-Peachtree Overlay District ("Overlay District"), which runs along Peachtree Street and encompasses a number of parcels all with different underlying zoning. The Overlay District contains its own zoning rules allowing for mixed-use, high-density development on any of the parcels contained in the district regardless of underlying zoning, and if the provisions of the Overlay District conflict with the underlying zoning, the Overlay District provisions govern.

In October 2014, the Developers submitted a request for rezoning of the entire property from C-1 and R-100 to PC-2 in order to build a high-density mixed-use development. In May 2015, the Developers submitted a LDP application pursuant to the Overlay District provisions, seeking to build a multistory building, including 276 residential multifamily units, 11,300 square feet of office space, and 19,500 square feet of commercial space on the property.[2] Instead of waiting for a decision on the pending rezoning application, the Developers withdrew it to await a decision on the LDP.

---

[2] Under the proposed development, the buildings, multifamily units, and parking spaces would all be located on the portion of the property with underlying zoning of C-1. No multifamily units were proposed on any land zoned to the underlying R-100 district.

The Planning Director denied the LDP, finding that the Developers needed to have the property rezoned in order to proceed. The Planning Director concluded that underlying R-100 zoning on part of the property contained a density requirement that precluded the development proposed by the Developers. The Planning Director stated that "[w]herein the . . . Overlay District is absent of density[,] the existing R-100 has a mandated density of one single-family detached dwelling permitted per parcel." The Developers appealed to the ZBA, and the ZBA affirmed the denial of the permit after a hearing.

The Developers then filed a petition for writ of certiorari to the superior court, challenging the denial of the permit. After a hearing, the superior court found that the Developers failed to exhaust their administrative remedies by withdrawing their rezoning application. Additionally, the superior court found that the ZBA's decision was supported by the record and not an abuse of discretion.

1. The Developers argue that the superior court erred by affirming the denial of the LDP because the underlying R-100 zoning provisions conflict with the overlay district regulations and, therefore, do not apply. We agree.

As an initial matter, the Developers contend that the superior court applied the incorrect legal standard to their appeal. We agree that the superior court failed to

4

apply the appropriate de novo standard of review to the interpretation of the zoning ordinances at issue, and thus, its review was flawed from the outset.[3]

Applying that standard here, the Developers are correct that the Planning Director and ZBA incorrectly interpreted the zoning ordinances to require a rezoning in this instance.

Pursuant to City of Brookhaven Code Section 27-31, "[d]ensity means the number of dwelling units per acre of land," "dwelling, single-family, means a building designed for and containing one dwelling unit," and "dwelling unit, multifamily, means one or more rooms with a private bath and kitchen facilities comprising an independent, self-contained residential unit in a building containing four or more dwelling units."

R-100 designated lots are restricted by floor area, numbers of structures, and lot coverage, requiring minimum lot sizes of 15,000 square feet, minimum dwelling sizes of no less than 2,000 square feet, coverage not exceeding 35 percent, and a single dwelling plus allowable accessory buildings, such as garages or sheds.[4]

---

[3] See *Discovery Practice Mgmt.*, 338 Ga. App. at 138-139 (2), quoting *Burton v. Glynn County*, 297 Ga. 544, 546 (1) (776 SE2d 179) (2015) & *Haralson County v. Taylor Junkyard of Bremen*, 291 Ga. 321, 323-324 (2) (729 SE2d 357) (2012).

[4] See City of Brookhaven Code § 27-141 to 27-151.

5

C-1 zoned lots are intended to provide retail shopping and service areas within the city, and a list of allowable establishments are contained in the code; lot coverage is limited to 80 percent, and minimum lot area is 20,000 square feet.[5]

As stated previously, the three lots at issue are contained in an overlay district. With regard to all overlay districts in the City of Brookhaven, the Code explains that

> [o]verlay districts are supplemental to the zoning district classifications established in article II of this chapter. All development and building permits for lots located within any overlay district shall meet all of the requirements of the base zoning district in which they are located and in addition shall meet all of the requirements of the overlay district applicable to said lot. Where there are conflicts between overlay district regulation and other regulations contained in the Code, the overlay regulation shall govern. Where the overlay district regulation is equally restrictive with other regulations in this Code, the overlay district regulation shall govern.[6]

This conflict governance provision is reiterated in the Brookhaven-Peachtree Overlay District provisions of the City of Brookhaven Code Section, which provide that "[w]herever the underlying zoning regulations are in conflict with the provisions of this overlay district, the regulations of this overlay district shall apply. Conflict

[5] See City of Brookhaven Code § 27-576 to 27-586.

[6] See City of Brookhaven Code § 27-656.

6

means there are competing regulations or provisions. In the absence of a provision in the overlay district, the regulations of the underlying zoning shall apply."[7]

This section also explains that the Overlay District is part of a Livable Centers Initiative, the "purpose [of which] was to create a community vision and action plan for the development of a more dynamic mixed-use community with the character of a multistory, urban village surrounding . . . the Peachtree Road corridor from Fulton County to Ashford-Dunwoody Road."[8]

Turning to the specific requirements of the Overlay District, which covers all three lots in the development, the Code sets forth various requirements for architectural design, setbacks, sidewalks, transitional buffer areas, height requirements, lot area and yard requirements, landscape zones, parking, and signage in order to control development within the corridor to fit the Livable Centers Initiative.[9] Residential uses in this specific portion of the Overlay District are limited

---

[7] See City of Brookhaven Code § 27-728.15.1.

[8] Id.

[9] See City of Brookhaven Code §§ 27-728.15.4 to 27-728.15.12.

7

to multifamily dwellings, single-family attached dwellings, and live-work units.[10] The Overlay District's zoning ordinances do not allow for single-family detached housing as zoned in R-100 lots. Therefore, a conflict exists between the Overlay District provisions and the R-100 provisions, and in such a case, the Code requires that the provisions of the Overlay District govern.[11]

Because of this conflict, it was erroneous for the Planning Director to then apply the R-100 restrictions for density — number of dwelling houses per lot — to the development at issue.[12] Moreover, "[a]ll parts of an ordinance relating to the same subject matter must be harmonized to reconcile conflicts, and any section of an ordinance must be construed in relation to the whole ordinance of which it is a part."[13]

---

[10] See City of Brookhaven Code § 27-728.15.12 (1) (c) 1.-3. "The minimum size of the live-work unit shall be 1,200 square feet with at least one-third of the unit designated for residential space." See id. at (3) (a) (15). There are numerous height, setback, and other requirements for other portions of the development. See City of Brookhaven Code § 27-728.15.12.

[11] See City of Brookhaven Code § 27-728.15.1.

[12] See, e.g., *Discovery Practice Mgmt.*, 338 Ga. App. at 139 (2) ("Here, 'the language of the ordinance is plain and unambiguous, and does not lead to contradictory, absurd, or wholly impracticable results, and it is the sole evidence of legislative intent and must be construed according to its terms.'").

[13] *DeKalb County v. Post Apartment Homes*, 234 Ga. App. 409, 412 (1) (506 SE2d 899) (1998). See also *Hogan v. DeKalb County*, 196 Ga. App. 728, 729 (397 SE2d 16)

Thus, the application of the R-100 minimum dwelling size to the development also was erroneous because such application would never be triggered in light of the conflict between the R-100 and Overlay District zoning as previously noted. The Overlay District contains long lists of requirements for developments within the area, but no violation of the Overlay District zoning provisions was noted as a reason for denying the LDP, and it was error to deny the permit on the sole basis that it failed to comply with R-100 density requirements. Accordingly, the superior court erred by upholding the determination of the ZBA and Planning Director.

2. The Developers also contend that the superior court erred by finding that they failed to exhaust their administrative remedies by withdrawing their rezoning application. Again, we agree.

The Overlay District Code states that "[n]o [LDP] shall be issued within the Brookhaven-Peachtree Overlay District until the person applying for such [LDP] has submitted an application meeting all requirements of this division and such

_____

(1990) ("It is an elementary rule of statutory construction that a statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes 'in pari materia,' are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto.") (punctuation omitted).

9

application has been approved as provided herein."[14] And there are no requirements that the parcels within the Overlay District first be rezoned if the LDP application meets the requirements contained in the Code. Accordingly, because the decision to deny the LDP based on application of underlying R-100 zoning was a misinterpretation of the ordinances as stated in Division 1, and because there was no provision in the Overlay District ordinances requiring rezoning prior to having an LDP granted, the Developers exhausted their administrative remedies by appealing the Planning Director's LDP denial to the ZBA and to the superior court. The court erred by ruling otherwise.

*Judgment reversed. Miller, P. J., and Reese, J., concur*.

---

[14] See City of Brookhaven Code § 27-728.15.4 (a).